Filed 3/12/21  P. v. Navarro CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JACOBO NAVARRO,<br><br>        Defendant and Appellant. | A158596<br><br>(Contra Costa County<br>Super. Ct. No. 50401711) |

Appellant Jacobo Navarro was convicted of second degree murder in 2004, following a jury trial, and this court affirmed his conviction on appeal. In 2019, he filed a petition for resentencing pursuant to newly enacted Penal Code section 1170.95,[1] and the trial court denied the petition after finding that he did not make a prima facie showing of entitlement to relief. Appellant now appeals, contending the trial court improperly relied on this court's prior opinion at the prima facie stage to (1) engage in judicial factfinding on issues not conclusively resolved by the record of conviction, and (2) determine that the evidence discussed in that opinion would support a finding that appellant was guilty under a still valid theory of murder. Respondent agrees.  We conclude appellant made a prima facie showing of entitlement to relief, and the trial court therefore erred in denying his

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

petition for resentencing.  We will reverse and remand the matter to the trial court for further proceedings.

## PROCEDURAL BACKGROUND

In February 2004, appellant was charged by information with murder (§ 187).  The information alleged that he had personally used a firearm (§ 12022.53, subd. (b)).  In April 2004, a jury found appellant guilty of second degree murder and found true the firearm use enhancement.  The trial court sentenced appellant to 15 years to life in prison on the murder count, with an additional 10 years for the enhancement.  In May 2006, following an appeal, this court affirmed the judgment and denied appellant's petition for writ of habeas corpus.  (*People v. Navarro* (May 17, 2006, A106805, A112188) [nonpub. opn.].)[2]

On May 3, 2019, appellant filed a petition for resentencing pursuant to section 1170.95, and the trial court appointed counsel to represent him.

On September 9, 2019, following briefing by the parties, the court denied the petition for resentencing.

On September 27, 2019, appellant filed a notice of appeal.

## FACTUAL BACKGROUND

The evidence presented at appellant's jury trial, as set forth in this court's 2006 opinion, can be summarized as follows.

On October 26, 2003, appellant and another man, S.R., twice went to a parking lot where Ignacio Gonzalez was shot and killed.  The statements of witnesses who observed appellant and S.R. in the parking lot were somewhat inconsistent with their testimony at trial, but the evidence generally showed that during the first visit, S.R. told appellant to open the trunk of the car they were driving and give him the gun.  As he opened the trunk, appellant

---

[2] On August 30, 2006, the California Supreme Court denied appellant's petition for review (case Nos. S144629, S144661).

said "words to the effect that if he was going to take it out, it was because he was going to use it." One witness then told appellant and S.R. not to do anything at his home, and appellant "closed the trunk and said they were not planning to do anything." As appellant and S.R. drove away, a witness recalled S.R. saying that they would come back.

About 10 minutes later, appellant and S.R. returned in the car and parked on the street. Witnesses saw the two men "walk into the parking lot, appellant trailing behind S.R. and stopping some distance behind him while openly displaying a handgun that was tucked in his waistband." After walking up to Gonzalez, S.R. took a handgun out of his waistband, and shot him. A witness testified that she saw appellant "stand some feet behind S.R. during the shooting, and then remove his gun from his waistband and hold it as he turned to walk back to the car with S.R." Another witness testified that he heard four shots and saw appellant, about 18 feet away from S.R. He then saw S.R. walk to the car with appellant about 10 feet behind him. The witness did not see appellant reach for his gun or remove it from his waistband. Appellant's nephew, who also was present for the shooting, testified that he did not see appellant with a gun, although he acknowledged having previously told police that he had seen appellant with a gun in his waistband at the time of the shooting.

After the shooting, appellant and S.R. walked back to the car and drove away. According to witnesses, appellant "did not protest, appear to be surprised by the shooting, or appear to be coerced by S.R. into accompanying him back to the car . . . ."

There was also evidence that appellant and S.R. had been drinking a short time before the shooting. A bartender testified that appellant drank two or three shots of tequila within an hour or two of the shooting and an

3

eyewitness at the scene of the shooting testified that he thought appellant was drunk.

At trial, the prosecutor requested instructions on both aiding and abetting and liability for the natural and probable consequences of a target offense of assault with a firearm. The prosecutor thought it was unlikely that appellant went to the parking lot without an intent to kill, but believed that "a jury could conceivably conclude that appellant had intended only to assist S.R. in 'roughing up' Gonzalez with a gun, and that the killing was a natural and probable consequence of the lesser crime of assault with a firearm." The court gave the natural and probable consequences instruction and the prosecutor discussed that theory of liability at length in closing argument.

On appeal, we rejected appellant's contention that substantial evidence did not support the trial court's natural and probable consequences instruction. We disagreed, finding that "it was possible for a juror to reasonably infer from the evidence that appellant intended to assist S.R. to assault Gonzalez with a firearm, but not necessarily to kill him." We also cited the evidence that both appellant and S.R. had been drinking before the shooting, "from which a juror might infer that a planned assault with a firearm went further than perhaps intended." In addition, appellant's nephew had testified that appellant did not have a weapon when he returned to the scene, "suggesting, if believed, that appellant was not necessarily acting with an awareness of the extent of violence that was about to occur." We further observed that appellant's and S.R.'s exact intentions could only be inferred because there was no direct evidence of their intent.

We held that "while the evidence was overwhelming in support of the conclusion that appellant aided and abetted S.R. with the knowledge that S.R. was going to kill Gonzalez, substantial evidence warranted the court's

4

decision to give the natural and probable consequences instruction upon [the prosecutor's] request."

## DISCUSSION

### I. *Trial Court Background*

In his petition for resentencing, appellant checked the box stating, "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine, and I could not now be convicted of murder because of [section] 188, effective January 1, 2019." He also requested the appointment of counsel to assist him during the resentencing process. After the trial court appointed counsel for appellant and both parties submitted briefing, the court denied the petition for resentencing.

In its order, the court first stated that even assuming the jury found appellant guilty of second degree murder under the natural and probable consequences doctrine, he would only be entitled to relief under section 1170.95 if he "demonstrated that he could not be convicted under any other remaining, valid theory of liability following the adoption of the new definitions of murder in [sections] 188 and 189." The court then discussed evidence from our opinion affirming appellant's conviction, which the court said "proved convincingly" that appellant was convicted under an aiding and abetting theory.

The court found that "the appellate court's review of the evidence in this case makes clear beyond a reasonable doubt that the evidence presented at [appellant's] trial would support a finding that [appellant], acting with intent to kill, aided and abetted a murder committed by his co-defendant . . . . For this reason, [appellant] has not made out a prima facie case that he could

5

no longer be convicted of Second Degree Murder under the newer, more restrictive definitions of murder set out in [sections] 188 and 189."

### *Legal Background*

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.; Stats. 2018, ch. 1015, eff. Jan. 1, 2019) " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847 (*Gentile*).) "Among other things, Senate Bill No. 1437 amended . . . section 188 to provide that '[e]xcept as stated in subdivision (e) of Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*Gentile*, at p. 839.)

Senate Bill No. 1437 also added section 1170.95 "to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under . . . ameliorative provisions" in amended sections 188, subdivision (a)(3) and 189, subdivision (e). (*Gentile*, *supra*, 10 Cal.5th at p. 843.) "Section 1170.95 is the exclusive avenue by which those previously convicted of murder under now-invalid theories may obtain retroactive relief. [Citation.] It 'lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her conviction and resentencing.' [Citation.] Further, the relief is fully retroactive, applying not only to defendants whose convictions are not yet final but to all those

6

convicted of murder under a natural and probable consequences or felony murder theory, no matter how long ago they were convicted, if certain conditions are met. [Citation.]" (*People v. Duchine* (2021) 60 Cal.App.5th 798, 809 (*Duchine*), citing *Gentile*, at p. 853.)

Specifically, " ' "[a]n offender may file a petition under section 1170.95 where all three of the following conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a)(1)–(3).)

' "Pursuant to section 1170.95, subdivision (c), the petition shall include, among other things, a declaration by the petitioner stating he or she is eligible for relief based on all three aforementioned requirements of subdivision (a). A trial court that receives a petition under section 1170.95 'shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.' (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court 'shall issue an order to show cause.' (§ 1170.95, subd. (c).)

' "The trial court must then hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) 'The

7

parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.' (§ 1170.95, subd. (d)(2).) Significantly, if a hearing is held, '[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) " ' [Citation.] . . . '[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) ' " 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' (§ 1170.95, subd. (d)(3).)" ' [Citation.]" (*Duchine, supra,* 60 Cal.App.5th at p. 810, quoting *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1148–1149.)

Recently, in *Duchine*, a panel of this Division addressed the same issues raised here and found that the trial court improperly denied a petition for resentencing at the prima facie stage by (1) "engag[ing] in judicial factfinding on issues not conclusively resolved by the record of conviction," and (2) concluding the petitioner could "theoretically have been found guilty" under a still valid definition of murder. (*Duchine, supra,* 60 Cal.App.5th at p. 816.) As we explained: "[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and

8

had the requisite intent, the trial court should not question his evidence." (*Id*. at p. 815, citing *People v. Drayton* (2020) 47 Cal.App.5th 965, 981–982 [at prima facie stage, trial court may not evaluate evidence, make credibility findings adverse to petitioner, engage in factfinding, or exercise discretion]; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116 [disagreeing with *Drayton* and holding that at prima facie stage, trial court should not accept petitioner's "assertions as true and issue an order to show cause if substantial evidence in the record supports a murder conviction under current law"], review granted, Feb. 10, 2021, S265692.)

Such consideration of the evidence and judicial factfinding may only take place after a prima facie case has been made and an order to show cause has issued, at which point the parties are permitted to present evidence from the record and/or new evidence at an evidentiary hearing. The court will only then determine whether the prosecution has proved beyond a reasonable doubt that the petitioner is ineligible for resentencing. (*Duchine, supra,* 60 Cal.App.5th at pp. 815–816; see § 1170.95, subd. (d)(3).)

### *Legal Analysis*

Appellant contends the trial court erred in denying the petition at the prima facie stage after improperly relying on this court's prior opinion to (1) engage in judicial factfinding on issues not conclusively resolved by the record of conviction, and (2) determine that the evidence discussed in that opinion would support a finding that appellant was guilty under a still viable theory of murder. Respondent agrees. Because these issues concern interpretation of section 1170.95, our review is de novo. (*Duchine, supra*, 60 Cal.App.5th at p. 811.)

It is undisputed that the record of conviction in this case does not conclusively demonstrate that appellant is ineligible for relief under section

9

1170.95 and the court therefore should not have questioned his evidence. (See *Duchine, supra,* 60 Cal.App.5th at p. 816.) As respondent observes, "there is nothing in the record that indicates appellant was necessarily convicted of murder based on a theory that he acted with implied malice or was a direct aider and abettor. The finder of fact was not specifically required to consider that question [and this court's] opinion does not establish or eliminate the theory relied on for conviction. Given the presence of the jury instruction on natural and probable consequences, it remains possible appellant's liability for murder was based on the theory that he aided and abetted an assault, the natural and probable consequences of which was death."

In denying appellant's petition for resentencing, the trial court thus erred in both of the ways discussed in *Duchine*: it engaged in judicial factfinding on issues not conclusively resolved by the record of conviction at the prima facie stage *and* determined that appellant "theoretically" still could have been found guilty as an aider and abettor under the new, more restrictive definition of murder set forth in section 188. (See *Duchine, supra,* 60 Cal.App.5th at p. 816.) Because appellant made a prima facie showing under subdivision (c) of section 1170.95 that he is entitled to relief, the court instead should have issued an order to show cause and reserved its evaluation of the evidence for the next phase of the process, during which the parties could rely on the record of conviction or offer additional evidence at a hearing. (See § 1170.95, subds. (c), (d)(3).) The court would then be in a position to determine whether the prosecution has satisfied its burden of showing beyond a reasonable doubt that appellant is guilty of murder under a still valid theory, and therefore ineligible for resentencing. (See § 1170.95, subd. (d)(3).)

10

**DISPOSITION**

For the foregoing reasons, the order denying appellant's petition for resentencing is reversed and the matter is remanded to the trial court with directions to issue an order to show cause pursuant to section 1170.95, subdivision (c) and hold a hearing in accordance with section 1170.95, subdivision (d), as discussed in this opinion.

                                     _____

                                     Kline, P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*People v. Navarro* (A158596)